Mr. Justice Wylie
stated tbe case and delivered the opinion of tbe court:
The bill in this case was filed on behalf of the widow and infant heirs of John Fletcher to have a deed made by John Fletcher in his life-time to his brother, the defendant, set aside for fraud and want of consideration.
The lot and improvements in controversy were purchased by John Fletcher about eight years ago for $2,200, and were proved to be worth at this time about $3,000.
The purchase-money expressed in the deed, and which the defendant says he paid in cash, was $1,600.
The property in question was all that the deceased owned in the world, and was purchased from the earnings of his industry and economy. John was a native of Ireland, and was the first of his family to emigrate to this country. It appears *39 that subsequently he remitted from time to time the means required to aid his mother, brother, and sisters to come over ■and make their home in this District. Edward, thedefendant, arrived some time during- the recent war, probably about 1804. He was very poor at that time, but was industrious and careful, and probably able to lay up money from the proceeds of his labor. He says that in this way he had accumulated the exact amount of $1,600, which he paid his brother for the property in question. His statement is confirmed by that of his mother, and that of his sister, Mrs. Conner. These witnesses, however, were shown to be inimical to the widow, so ignorant as not to know the denomination of one note from that of another, and so inconsistent in their statements as to seriously discredit their whole testimony.
The testimony of the defendant himself is, likewise, so self-contradictory, and, in essential particulars, so unreasonable, as to weaken materially, if not wholly destroy, not only its own, but the credit of his answer.
Both the parties were so ignorant as to be able neither to read nor write; no receipt was shown for payment of the purchase-money, and no witness produced to prove the payment.
The widow proves that no money was to be paid; that the defendant told her that none had been paid; that he induced her to execute the deed by assurances that he would hold the property in trust for her, and would reconvey it agreeably to the arrangement which had been entered into between himself and her husband; and her story is strongly corroborated by evidence of the defendant’s acknowledgments made to at least one other witness, and by the fact that he made no claim to the property until after his brother’s ■death, but allowed the latter to collect the rents, pay the taxes, and exercise other acts of ownership.
Standing alone, probably, the complainant’s evidence would not be sufficient to overthrow the deed; but the testimony of the defendant himself and of his witnesses is of such a character as greatly to strengthen the cause of the complainant.
But there is one ground set out as a ground of relief in the bill, which precludes a court of equity from interfering in the present cause. The bill alleges ‘‘ that notwithstanding said deed is absolute upon its face, as also that it recites *40 a consideration of sixteen hundred dollars ($1,600,) as the consideration therefor, that not one dollar was given for the same, and that the same was intended to operate as a trust, and was, as your complainant is informed and believes, and so charges as follows, viz: a short time prior to the execution of said deed one Patrick Maher and Eliza, his wife, commenced on the law side of this honorable court an action for alleged slander against said John Fletcher, deceased, and your complainant, Bridget, his wife; said action being No.. 10923 at law, as will more fully appear, reference being had to the proceedings in said cause. That, immediately after the institution of said action at law, said defendant, as your-complainant is informed and believes and so charges, importuned the said John, who was the brother of the defendant, and in whom he had great confidence, to execute said conveyance for the purpose of interdicting any process that might issue upon the result of said action as against the said real estate, and your complainant, notwithstanding she was informed that her said husband had been advised by counsel not to execute said conveyance, yielded and joined in said deed, and that it was understood that the defendant should pay nothing for said conveyance, and that as soon as said action at law was dismissed, or should be decided in favor of the defendants therein, said defendant was to reconvey said property to her said husband, his heirs or assigns.”
Now such an averment as that in a bill is always fatal to the bill itself. For although a plaintiff in an action for tort cannot be said to be a creditor until he gets his judgment, yet having brought his action for damages, a court of equity will not sustain as against him any conveyance whose object is to defraud him of the fruits of his judgment; nor, should he be defeated in the action, will it interfere to set aside the deed, but will leave the parties to the consequences of their own act.
It may be that a court of equity would assist the grantor in such a case, if there were circumstances shown to exist which recognized its interposition on other grounds of recognized and settled equity jurisdiction, such as fraud in procuring the deed, imposition by the grantee, in violation of some fiduciary relation, delusion, or the like, on the part of' the grantor, at the time of executing the deed.
*41 In such a case the parties would not he in pari delicto, and the deed, although made for an improper purpose, yet, hav ing been unfairly procured, through the influence of the grantee, or made under a delusion as to facts, might be set aside.
It is true that in the present instance the bill contains the additional averment that the action for slander was never brought to trial, but was dismissed by the plaintiff. We are of opinion, however, that this fact is not of itself sufficient to justify the court to set aside a deed which the bill itself avers was made after the action had been brought, and for the acknowledged purpose of defeating the collection of the judgment in case damages should be recovered.
The record in that cause is referred to and made a part of the bill, although it was not filed as an exhibit, nor produced at the argument in this court. On looking into it we have discovered that the action was not brought until the 5th of August, 1873, and the writ was not served till the 7th of that month. The deed in question, however, bears date the 16th, and was left for record on the 19th of June of that year, more than six weeks previous to the bringing of the action for slander. And yet the complainant’s bill contains the averment that the deed was executed after the action had been brought, and with a view to place the property beyond the reach of any final process which might be issued in case the plaintiff should recover a judgment in that action.
Whether a deed executed under the actual circumstances which attended the execution of this one is void as to others from motives of public policy and yet valid as between the parties, because made under the apprehension that an action for slander might thereafter be brought against the grantors, presents, in our opinion, probably a different question from that which is presented on the face of the present bill.
For these reasons, we think the present bill ought to be dismissed without costs and without prejudice to complainant’s right to institute a new suit should they be so advised, based upon the facts as they exist as to the transaction in question, and that the decree below should be affirmed.
Cartter, Ch. J., dissenting.